UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **SHELBY L. ROBERT** <br> **BETTY C. ROBERT** | **01-11759** |
| DEBTORS | CHAPTER 7 |
| **RIVER PARISHES FINANCIAL** <br> **OF GONZALES, L.L.C.** | ADV. NO. <br> **02-1118** |
| PLAINTIFF | |
| V. | |
| **SHELBY L. ROBERT and BETTY C. ROBERT** | |
| DEFENDANTS | |

## MEMORANDUM OPINION

River Parishes Financial Services of Gonzales, L.L.C. ("River Parishes") sued debtors Shelby and Betty Robert to prevent their discharge pursuant to 11 U.S.C. §§727(a)(4)(A) and 727(a)(2)(B).[1] River Parishes complains about several erroneous listings and omissions from the schedules or statement of financial affairs. Shelby Robert ("debtor" or "Robert") does not dispute having made several scheduling errors and omissions, but contends that all the omissions were inadvertent and

---

[1] River Parishes' complaint was tried on April 28, 2003 and, after the case in chief was concluded, the Court dismissed the complaint against Betty Robert only on partial findings pursuant to Fed. R. Bankr. Proc. 7052(c).

immaterial.[2]

To prevail under §727(a)(4)(a), River Parishes must prove that:

      (1) The debtor made a statement under oath;
      (2) The statement was false;
      (3) The debtor knew the statement was false;
      (4) The debtor made the statement with fraudulent intent; and
      (5) The statement related materially to the bankruptcy case.

*Matter of Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).[3]

The Court agrees that under *Beaubouef*, some of the debtor's omissions were not material. However, other errors and omissions were material, and the Court concludes because of those that Shelby Robert's discharge must be denied pursuant to 11 U.S.C. §727(a)(4)(A).[4]

## I. Immaterial Non-Disclosures

### A. Corporate Offices

The debtor failed to disclose his positions as an officer of Donaldson Plantation, Inc. ("DP") and Donaldson-Clark Plantation, Inc. ("DCP") in his answer to statement of financial affairs question 18.[5]  The debtor never attended a meeting of the board or shareholders for either corporation, although he did sign documents in his capacity as an officer of both entities.

---

[2] Answer , ¶11.

[3] Oaths within the meaning of §727(a)(4) include statements in or omissions from the petition or schedules, as well as the debtor's statements during an examination in a bankruptcy case. *Matter of Hughes*, 184 B.R. 902, 909 (Bankr. E.D. La. 1995), citing *Beaubouef*, 966 F.2d at 178.

[4] Because the Court will deny the debtor's discharge under §727(a)(4), the plaintiff's claim under §727(a)(2)(B) will not be addressed.

[5] The debtor eventually did include this information on an amended statement of financial affairs filed January 28, 2003.

The subject of an allegedly false oath is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Beaubouef*, 966 F.2d at 178 (citation omitted).

River Parishes offered no evidence to support a conclusion that the debtor's failure to list his corporate offices adversely affected the estate. No evidence suggested that Robert's positions with the corporations provided any income to him or that he had any business dealings with the companies that yielded assets. Accordingly, the Court agrees with Robert that this omission was not material.

### B. Prepetition Lawsuit

Robert failed to disclose in his response to question 4 of the statement of financial affairs that Ivory Brown named Robert a defendant in a prepetition lawsuit Brown filed in the Twenty-Third Judicial District Court.[6] The lawsuit related to a tax sale of immovable property the debtors owned at one time, but which the parties agree DP now owns. Mr. and Mrs. Robert live in the house.

The debtor admits that he was named a defendant in the lawsuit, and even answered the petition.[7] He testified that the litigation relates to the house in which he and his wife now live, and that he understood that Brown's lawsuit is based on a claim that Brown bought the house at a tax sale.

No evidence was offered to support a conclusion that the lawsuit was material and River Parishes did not point out any effect the outcome of the suit would have on the estate. Considering the facts, the Court agrees that this omission also was not material.

---

[6] "Ivory Brown v. Donaldson Plantation, Inc., Edward Landry and Shelby Robert," Civil Action No. 69394 (Twenty-Third Judicial District Court for Ascension Parish, Louisiana).

[7] The debtor made these representations in his January 2003 amended statement of financial affairs.

## II. Other Non-Disclosures

### Prepetition Transfers

The debtor also failed to disclose several pre-bankruptcy transfers in his responses to questions on the original statement of affairs.

(1) Payment to Debtor's Nephew Six Days Before Bankruptcy

Only six days before filing bankruptcy, Robert paid $1,520 to lawyer Alan J. Robert, his nephew and godson.[8] Alan Robert represented the debtor in the Ivory Brown litigation described earlier in this opinion.

The debtor's answer to statement of financial affairs question 3 did not disclose the payment to his nephew on the eve of his chapter 7 filing. Robert testified that he was not certain of the reason he did not disclose the payment, only that he did not believe the payment had to be listed in his schedules. The debtor offered no further explanation for his failure to list the transfer.

Mr. Robert testified that at the meeting of creditors he turned over bank statements and checks to his bankruptcy trustee, apparently reasoning that the trustee should have discovered the omitted prepetition transfer at that point. The debtor claimed that the trustee looked at the documents and returned them to the debtor without making copies. Even if the trustee reviewed the debtor's bank records in the setting of a meeting of creditors and failed to detect the avoidable transfer, his oversight will not relieve the debtor from the consequences of his failure to disclose the transfer on the statement of financial affairs. *See In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987) ("the trustee . . . should not be

---

[8] Check number 8605 dated July 20, 2001 drawn on Shelby Robert's account was admitted into evidence as Exhibit P-16f.

required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight").

After River Parishes examined the debtor pursuant to Bankruptcy Rule 2004 and filed the complaint in this adversary proceeding in late 2002, Robert's counsel in this proceeding (who did not represent him in the initial chapter 7 filing) advised Robert that the payment to Alan Robert was problematic. The lawyer prepared an amendment to the statement of financial affairs disclosing the payment to Alan Robert and, in January 2003, at the debtor's request, Alan Robert prepared a check payable to the bankruptcy trustee for the amount of the debtor's prepetition payment to him. Debtor's counsel forwarded the check to the trustee with a January 28, 2003 cover letter characterizing it as a return of the debtor's prepetition "preferential" payment to Alan Robert.[9]

The debtor contends that the payment was in the ordinary course of business and need not have been included in response to item 3 on the statement of affairs. He also argues that the omission was not material. The Court disagrees.

Apparently on advice of counsel, the debtor prevailed on his nephew to voluntarily return the prepetition payment, and then amended his bankruptcy schedules to disclose the prepetition transfer. However, this action happened only after River Parishes examined the debtor, unearthed the transfer and then filed suit. Had River Parishes not pursued the debtor's examination, the undisclosed transfer may never have been discovered, investigated or undone. Moreover, the debtor's insistence that the information needn't be disclosed because it was not called for by the subject matter of question 3 of the statement of financial affairs is belied by his amendment of the schedules once the transfer became

---

[9] The letter was admitted into evidence as Exhibit P-36 and the check was admitted as Exhibit P-16(g)(j).

5

known at his examination in late 2002.

Although the debtor had the burden of proving that the transfer to Alan Robert was in the ordinary course of business, 11 U.S.C. §547(g), he offered no evidence to support his claim that the payment to his lawyer in the state court litigation was made in the ordinary course of the debtor's and his lawyer's business or financial affairs under 11 U.S.C. §547(c)(2).  In any case, the return of the money to the trustee at the debtor's counsel's recommendation undermines this argument.[10]

(2)  Payments to Banks on Loans of Others

The debtor also failed to disclose on his original and amended statement of financial affairs at question 10 that, between 1999 and 2001, he made numerous payments on DCP's debt to First National Bank of Gonzales and its successor, Whitney National Bank.  Robert acknowledged that, since 1999, he had made monthly payments on the bank debt when he was able, even though there was no evidence that the Roberts had any personal obligation to the banks.  According to the debtor, he made the bank payments in lieu of paying rent for the home he and his wife occupy.[11]  His testimony was uncorroborated.

The debtor contends that the payments were not material.  He reasons that because the payments were made in lieu of rent, they were not transfers that the trustee could have avoided under 11 U.S.C. §548.  This misses the point.  The debtor's Schedule G indicates that the debtor was paying

---

[10] Alan Robert is an *insider* within the meaning of 11 U.S.C. §101(31)(A).  Consequently, the payment to him should have been disclosed in response to question 3(b) of the statement of financial affairs.

[11] Mr. Robert's answer to statement of financial affairs question 10 (other transfers) and the completed Schedules G (executory contracts and leases) and J (expenses) reflect that the debtor was paying rent of between $1,000 and $1,200 per month, when in fact he had no such rent obligation.

monthly rent of $1,000 and Schedule J recites a rental expense of $1,200. The monthly payments to the banks were actually well in excess of both amounts. Had the debtor disclosed the rental arrangement and described the payments, the trustee would have been alerted to this discrepancy, especially in view of the fact that the debtor himself had no personal obligation to the banks. The disclosure of the true nature of these payments is material to the debtor's business dealings and to the discovery of potentially avoidable transfers.

    (3) <u>Payment to Accounting Firm</u>

The debtor also failed to disclose in response to original and amended statement of financial affairs question 10 his payment of $1,375 to the accounting firm of Postlewaite & Netterville six weeks before the bankruptcy filing. The payment was for preparation of tax returns for DP and DCP, a debt for which Mr. and Mrs. Robert were not personally responsible. The debtor testified that he thought he and his wife had been reimbursed for the payment to the accountants, but offered no evidence of the reimbursement. Moreover, this version is inconsistent with the debtor's schedules. Had the debtor in fact advanced the money on behalf of DP and DCP, and not been repaid by them at the time of bankruptcy, he should have disclosed that obligation on Schedule B as an account receivable. The debtor's explanation for this omission is that, if there was no reimbursement from the companies, the money must have been owed to the companies as rent. Thus, the debtor maintains once again that the omission was immaterial. Once again, the Court disagrees.

The transfer should have been disclosed, because disclosure would have led the trustee to investigate it and possibly pursue recovery of the payment as a transfer avoidable under 11 U.S.C. §548 or §544.

The Court next addresses the issue of materiality and intent with respect to the allegations in general.

### III. Materiality of Non-Disclosures

Bankruptcy cases depend upon debtors' making full, complete and honest disclosures in schedules and statements. *In re Dreyer*, 127 B.R. 587, 593 (Bankr. N.D. Tex. 1991), citing *Hudson v. Wylie*, 242 F.2d 435 (9th Cir. 1957). The debtor has an obligation under 11 U.S.C. §521(1) to file schedules and statements truthfully and completely disclosing his or her financial affairs. Section 727(a)(4) serves as a deterrent to false scheduling, and helps to ensure that debtors provide information "that can be relied upon by anyone having reason to look at the statement or schedules." *In re Seablom*, 45 B.R. 445, 449 (Bankr. D.N.D. 1984). This is the reason why section 727(a)(4) penalizes a debtor's failure to disclose all matters material to the condition of the debtor's estate; that is, matters bearing a relationship to the estate or the debtor's business transactions, or concerning the discovery of such matters. *See In re Sapru*, 127 B.R. 306, 315 (Bankr. E.D.N.Y. 1991); *Beaubouef*, 966 F.2d at 178.

A debtor's failure to disclose an asset or business relationship that eventually may be found to have little or no value to the estate still may lead to denial of the debtor's discharge, because the debtor cannot be the sole arbiter of what is relevant or important to the estate. *In re Murray*, 249 B.R. 223, 231 (E.D.N.Y. 2000); *Sapru*, 127 B.R. at 315 (citation omitted). The debtor's duty is simply to consider the questions asked and to provide accurate answers. *Sapru*, 127 B.R. at 315.

Here, Robert was required to list the information requested in the statement of financial affairs and schedules. Other parties in interest were to decide whether the disclosures were significant enough

to merit further investigation. By failing to respond accurately and completely to the statements of financial affairs, Robert defeated the principal purpose debtors are required to file schedules. *See* 11 U.S.C. §521(1).

With the exception of the listing of corporate offices and the tax sale lawsuit, the debtor's several failures to disclose information are material. In the case of at least one of the undisclosed transfers, the debtor and apparently even the recipient, concluded that the transfer was avoidable and arranged to surrender it to the trustee.

### IV. Debtor's Intent

Reckless indifference to the truth is widely recognized as tantamount to fraud in an action under §727(a)(4). *See Matter of Sholdra*, 249 F.3d 380, 382 (5th Cir. 2001); *In re Dorio*, 407 F.2d 1330, 1331 (2d Cir. 1969). A reckless disregard for the truth may concern "'both the serious nature of the information sought and the necessary attention to detail and accuracy in answering . . . .'" *Sapru*, 127 B.R. at 316, quoting *In re Bailey*, 53 B.R. 732, 735 (Bankr. W.D. Ky. 1985).

The record sufficiently reflects a pattern of omissions by the debtor indicating at least a reckless disregard for the truth. *See In re Metz,* 150 B.R. 821, 824 (Bankr. M.D. Fla. 1993) (debtor's numerous omissions in his statements of financial affairs and schedules, taken together, can constitute a pattern suggestive of reckless disregard). Robert offered no credible explanation for failing to disclose the transfer to his nephew, less than one week before he filed bankruptcy, or the payment to the accounting firm, only six weeks before bankruptcy. The debtor's explanation that he made a number of substantial payments to the banks in lieu of paying rent to DP and DCP also is not credible, considering the lack of corroborating evidence of an agreement and the differences between the amounts of the

payments and the alleged monthly rental obligation.

This is not a case of an unsophisticated *pro se* debtor who made inadvertent errors and omissions due to lack of knowledge. Robert is an experienced businessman and was represented by counsel when he declared that the original statement of financial affairs and schedules were true and correct.

Finally, the Court declines the debtor's invitation to conclude that he adequately disclosed information that should have been included on the schedules and statement of financial affairs by filing subsequent amendments, and by producing his bank statements and cancelled checks to the trustee at the meeting of creditors. Amendment of the schedules and statements and production of the financial information, well after the case had begun and under the circumstances described in the debtor's testimony, cannot substitute for the original disclosure demanded by the schedules and statement of financial affairs. *See Sholdra*, 249 F.3d at 382 (amended schedules do not negate debtor's original false oaths); *Sapru*, 127 B.R. at 317 (subsequent disclosure of information by the debtor is insufficient to overcome allegations of false oath).

## **Conclusion**

The Court holds that the debtor made false oaths on his statement of financial affairs and schedules, and that his discharge must be denied under 11 U.S.C. §727(a)(4).

Baton Rouge, Louisiana, July 1, 2003.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

11